Filed 10/13/23  Souch v. McCormick CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHARLOTTE SOUCH et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>MARTIN McCORMICK et al.,<br><br>        Defendants and Respondents. | A163857<br><br>(Sonoma County<br>Super. Ct. No. SCV-266109) |

Plaintiffs Charlotte Souch and Houses 4 Homes, LLC (H4H) (collectively plaintiffs) appeal after the trial court granted defendants' motion for a terminating sanction against Souch due to her failure to comply with discovery orders.  On appeal, plaintiffs contend the court's imposition of a terminating sanction constituted an abuse of discretion because the sanction (1) was punitive; (2) placed defendants in a better position than they would have been in had they obtained the sought-after discovery; and (3) deprived Souch of due process.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiffs allege that Souch is the sole managing member of H4H, which owns two properties on Green Meadow Road and Vista Court in

---

[1]    The records designated by plaintiffs for inclusion in the clerk's transcript do not include key filings, including the operative first amended complaint and most of the papers filed in connection with defendants'

Sebastopol. Defendant Banrion Corporation, doing business as McCormick & Co. Homes and Loans (McCormick & Co.), is a mortgage broker and the general partner of defendant Max-Y Company, L.P. (Max-Y), a diversified financial marketing company engaged in residential mortgage banking. Defendant Martin McCormick is the president of McCormick & Co. Hereafter we will refer to McCormick, McCormick & Co., and Max-Y collectively as defendants.

Plaintiffs' allegations included all of the following. In January 2019, they obtained first and second loans from Max-Y, brokered by McCormick & Co., to purchase the Green Meadow Road property, and also refinanced a loan on the Vista Court property. Defendants knew that plaintiffs obtained the Green Meadow Road property as an investment property to renovate and sell, and defendants promised to provide additional funds for the renovation so long as plaintiffs could justify the amounts already spent. Defendants also promised that the loan on Green Meadow Road would cover the entire purchase, and that the loan on Vista Court was a cash-out loan that would immediately net Souch at least $80,000.

These representations were allegedly false, as the loan on Vista Court did not net an extra $80,000 in cash after the refinance, and the loan on Green Meadow Road was insufficient to cover the purchase price. Needing more money for renovations, plaintiffs requested and received two construction loans from defendants, but when plaintiffs requested a third draw of $119,000, defendants refused to provide more than $75,000 and required plaintiffs to put Vista Court up for sale. Defendants further

sanctions motion. (See Discussion, pt. A, *post*.) The following details have been gleaned from the original complaint, the trial court's order on the sanctions motion, and the respondents' appendix.

2

misrepresented that the loans on Green Meadow Road could not be refinanced because they were cross-collateralized, when in fact, they were not. Had plaintiffs known this, they would have refinanced those loans.

Plaintiffs allege that due to a lack of funding, they were unable to complete renovations in time for the summer selling season, and they eventually defaulted on the loans. In December 2019, defendants recorded notices of default on the Green Meadow Road and Vista Court properties.

Max-Y filed a cross-complaint against plaintiffs, alleging that Souch made material misrepresentations in her loan applications regarding H4H's fitness.

The matter was set for trial on September 3, 2021.

**A. Defendants' Motion for Sanctions**

In June 2021, defendants brought a motion for issue, evidence, terminating, and monetary sanctions against Souch.[2] The motion was based on Souch's failure to comply with her discovery obligations and two orders of the trial court, as follows.

First, in January 2021, defendants moved to compel Souch to attend a second session of her deposition and to produce requested documents after the initial session had been adjourned due to Souch's failure to provide responsive documents. In April 2021, the trial court granted the motion and ordered Souch to appear for deposition and produce responsive documents by early May 2021, and awarded defendants $1,620 in monetary sanctions. Souch failed to comply with the April 2021 order.

---

[2] The following month, defendants filed an amended motion requesting that sanctions be imposed against H4H as well. However, after granting the sanctions motion, the trial court would later clarify that sanctions were imposed only on Souch, not H4H.

In December 2020, defendants propounded form interrogatories, special interrogatories, and document production requests on both plaintiffs, and requests for admission on H4H. When plaintiffs failed to provide responses by the indicated deadline, defendants moved to compel responses and to have the requests for admission deemed admitted by H4H. Prior to the hearing on the motion, plaintiffs served responses to the written discovery, but H4H's responses were not verified.

In June 2021, the trial court denied the motion as moot as to Souch, but granted the motion as to H4H and ordered that H4H provide full and complete responses to the written discovery no later than June 17, 2021. The court ordered Souch and her counsel, jointly and severally, to pay defendants $1,035 in monetary sanctions in connection with the motion to compel. Additionally, the court ordered that the requests for admissions be deemed admitted as to H4H, and that Souch and her counsel pay defendants $892 in monetary sanctions. Plaintiffs did not provide timely, verified discovery responses as ordered. Furthermore, despite the multiple monetary sanctions orders against Souch and her counsel set forth in the April and June 2021 orders, no sanctions were paid.

Based on the foregoing, defendants argued that Souch's willful noncompliance with the April and June 2021 orders justified a terminating sanction (or alternatively, issue and evidence sanctions), and additional monetary sanctions against her. Defendants also noted in their sanctions motion that the discovery responses Souch had previously served (which rendered the prior motion to compel moot as to her) were "woefully deficient and no responsive documents were produced," and thus, they were bringing a separate motion to compel Souch to provide further responses to form interrogatories, special interrogatories, and requests for production.

4

Though the sanctions motion and motion to compel further responses were initially calendared for different days, the trial court continued the hearing on the sanctions motion to the same day as the motion to compel further responses: August 25, 2021. In its ruling continuing the sanctions motion, the trial court stated: "Unless Plaintiff starts participating . . . in this case forthwith, the Court is inclined to grant this motion [at] the August 25, 2021 hearing." The court also continued a motion to withdraw filed by plaintiffs' counsel to the August 25 hearing date.

Defendants filed notices of plaintiffs' nonopposition to both the sanctions motion and the motion to compel further responses. In advance of the continued hearing, defendants' counsel, Rachel Dollar, filed a declaration setting forth her unsuccessful efforts to meet and confer on the motion to compel further responses. Dollar noted that she "received no response" to her prior attempts to meet and confer, and that "[s]ince that time, [plaintiffs'] counsel has moved to withdraw and has advised that the client is uncooperative. Souch has not appeared for her court ordered deposition and failed to produce court ordered documents. She has also failed to provide further responses to the discovery which is the subject of the instant motions. No oppositions to the motions were filed. This is not a dispute concerning specific discovery responses or objections, but is, rather, an issue of the wholesale failure of the plaintiffs to participate in discovery over the past 8 months despite the upcoming jury trial scheduled to begin on September 3. Further efforts to meet and confer would be futile as the plaintiffs are not cooperating with their counsel or participating in the litigation." Dollar further noted that after the trial court indicated its inclination to grant the sanctions motion, "[n]o further responses have been provided and no

documents have been produced since the motions were filed," and Dollar was "not aware of any renewed participation by Plaintiffs in this litigation."

**B. Hearing and Order**

The record on appeal does not contain a reporter's transcript of the August 25 hearing, but a minute order in the clerk's transcript reflects that both sides appeared through counsel, and that the trial court took the matter under submission.

On August 31, 2021, the trial court issued its written order on the various motions. First, the court granted the motion of plaintiffs' counsel to withdraw. Second, the court granted defendants' sanctions motion, finding that "terminating sanctions are warranted based on Plaintiff's history of discovery abuses and Plaintiff's continued failure to comply with the Court's prior discovery orders."

Recounting in detail the various discovery disputes that led to the issuance of the April and June 2021 orders against Souch, the trial court stated, "[b]ased on this history, the Court can reach only one conclusion: Plaintiff has repeatedly and willfully misused the discovery process by failing to submit to authorized methods of discovery and by willfully failing to comply with the Court's prior orders. Furthermore, the Court gives great weight to the fact that Plaintiff's failure to submit to discovery has caused Defendants significant prejudice in their ability to reasonably prepare for trial, which commences in just over one week. Finally, the Court concludes that a lesser sanction would not be effective to induce compliance based on Plaintiff's history of discovery abuses in this case and in SCV-264915 (which involves similar discovery abuses by Souch); because the abuses continue despite the Court's prior sanctions orders; and because the discovery abuses encompass all issues in Plaintiff's complaint and Defendants' cross-

6

complaint. Therefore, because this appears to be an 'extreme case' where Plaintiff's discovery abuses persist despite the Court's prior rulings, the motion for terminating sanctions is GRANTED. The Court strikes Plaintiff's complaint and her answer to the cross-complaint and Defendants may seek an entry of default." The court additionally awarded defendants $5,580 in monetary sanctions, but denied defendants' motion to compel further responses against Such as moot.

Such timely appealed.

DISCUSSION

**A. Preliminary Matters**

We begin by addressing two preliminary matters. The first is plaintiffs' acknowledgment that the notice of appeal incorrectly identifies the appealed-from judgment. Specifically, the notice of appeal lists the following matters: "Judgment after an order granting a summary judgment motion" and "Other . . . 1) Defendants['] new motion dated 10/5/21 on clerical errors. [¶] 2) Plaintiffs' performance influenced by poverty, health, and pandemic disruptions." Plaintiffs argue that the notice of appeal should have identified the judgment after the August 31 order granting terminating sanctions (notice of entry of which was served on September 8, 2021), and they request relief from this error. As there appears to be no issue with regard to the timeliness of the appeal, we will construe the notice of appeal to be taken from the judgment after the order granting defendants' motion for terminating sanctions. (See Cal. Rules of Court, rules 8.100(a)(2) [notice of appeal must be liberally construed].)

The second preliminary matter relates to deficiencies in the opening brief and record on appeal. "An appellant's opening brief must . . . [p]rovide a summary of the significant facts limited to matters in the record." (Cal.

7

Rules of Court, rule 8.204(a)(2)(C).) Here, the opening brief devotes most of its factual and procedural summary to the allegations of the complaint, with only a brief mention of the sanctions proceedings, and no discussion of Souch's noncompliance with discovery orders. As such, the opening brief hardly presents a complete picture of the circumstances leading to the issuance of the terminating sanction in this case.

Additionally, the clerk's transcript lacks key documents, including most of the papers filed in connection with defendants' sanctions motion. In the record before us, the only documents from the sanctions proceedings are defendants' notice of plaintiffs' nonopposition, the minute order of the August 25 hearing, and the August 31 order. Plaintiffs did not provide a reporter's transcript of the hearing on the sanctions motion, or a suitable substitute. (See *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574 ["[a] proper record includes a reporter's transcript or a settled statement of any hearing leading to the order being challenged on appeal"]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [appellant has burden of providing an adequate record to support any claim of error].) Without a proper record, we cannot evaluate the issues requiring a factual analysis, and we must presume the evidence is sufficient to support the judgment. (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003–1004 & fn. 2.)

Having said this, we observe that defendants have filed a respondents' appendix providing the papers filed in connection with the sanctions motions, as well as the records from the prior discovery motions.[3] Because

---

[3] California Rules of Court, rule 8.124(b)(5), provides that a respondent's appendix may contain any document that could have been included in the appellant's appendix or joint appendix. Given that plaintiffs did not elect to use an appendix under California Rules of Court, rule 8.124, a more appropriate course would have been to serve and file a notice in the superior

respondent's appendix, along with the clerk's transcript, offer an adequate record for us to consider plaintiffs' contentions, we elect to reach the merits of the appeal.  (See *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 363, fn. 7.)

## B. Terminating Sanctions

The Civil Discovery Act permits the trial court, "after notice to any affected party, person, or attorney, and after opportunity for hearing" to impose sanctions "against anyone engaging in conduct that is a misuse of the discovery process."  (Code Civ. Proc., § 2023.030.)[4]  Misuse of the discovery process includes "[f]ailing to respond or to submit to an authorized method of discovery" and "[d]isobeying a court order to provide discovery" (§ 2023.010, subds. (d), (g)).  Available sanctions include monetary, issue, evidence, and terminating sanctions.  (§ 2023.030, subds. (a)–(d).)  The court may impose a terminating sanction by orders "striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process" and "dismissing the action, or any part of the action, of that party."  (*Id.*, subd. (d)(1), (3).)

" 'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action.'  A decision to impose the ultimate sanction—a judgment in the opposing party's favor—should not be made lightly.  'But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in

court designating any additional documents defendants wanted included in the clerk's transcript.  (See Cal. Rules of Court, rule 8.122(a)(2).)

[4]      Further unspecified statutory references are to the Code of Civil Procedure.

9

imposing the ultimate sanction.' " (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297 (*Parker*), internal footnotes omitted.)

In reviewing for abuse of discretion, we draw all reasonable inferences in support of the trial court's ruling. (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 749.) " 'It is appellant's burden to affirmatively demonstrate error and where the evidence is in conflict, we will affirm the trial court's findings. [Citation.] We presume the trial court's order was correct and indulge all presumptions and intendments in its favor on matters as to which it is silent.' [Citations.] The question on appeal 'is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose.' " (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1259–1260 (*Padron*).)

Applying these authorities, we conclude the trial court did not abuse its discretion in imposing a terminating sanction on Souch. Because the sanctions motion was unopposed, the trial court could permissibly find that the failure to oppose was an admission of the motion's merit. (Cal. Rules of Court, rule 3.1342(b).) The undisputed facts presented in the moving papers demonstrated that Souch failed to comply with the April 2021 order to appear for a second session of her deposition, produce responsive documents, and pay monetary sanctions to defendants. She also failed to comply with the court's June 2021 order requiring her, as the sole managing member of H4H, to provide further verified discovery responses on behalf of H4H and to pay monetary sanctions to defendants. Based on this showing, the trial court

10

reasonably and appropriately found there was a history of discovery abuse by Souch. (§ 2023.010, subds. (d), (g); *Parker*, *supra*, 149 Cal.App.4th at p. 297.)[5]

Likewise, the trial court did not abuse its discretion in finding that Souch's violations were willful. "A willful failure does not necessarily include a wrongful intention to disobey discovery rules. A conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance, is sufficient to invoke the penalty," and "the party on whom [discovery was] served has the burden of showing the failure was not willful." (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 787–788 (*Deyo*).) Plaintiffs plainly failed to meet their burden of showing that Souch's disobedience was not willful, as they offered no briefing or evidence in opposition to the sanctions motion. Consequently, the trial court had no reason to infer that Souch's noncompliance was justified in any way.[6] Even on appeal, Souch offers no

---

[5] The trial court also cited "Plaintiff's history of discovery abuses . . . in SCV-264915 (which involved similar discovery abuses by Souch)." Although neither party explains this portion of the court's order, we observe that defendants, in a footnote to their moving brief and a supporting declaration to their sanctions motion, requested judicial notice of an order granting terminating sanctions against Souch in a separate case, *Jesse Villasenor dba Green Valley Electric v. Charlotte Souch, et al.*, Sonoma County Superior Court Case No. SCV264915. While we are not aware of the trial court's ruling on the request, the court seems to have implicitly taken judicial notice of the *Villasenor* order given its mention of the case, and plaintiffs do not contend it was improper for the court to rely on the *Villasenor* order to support its finding of a history of discovery abuse by Souch. In any event, we are satisfied that the record of discovery abuse in the instant case alone provided ample support for the terminating sanction.

[6] We will not presume that any argument or showing of justification was made at the hearing on the sanctions motion. (See *Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 633, fn. 12 (*Shenefield*) [when there is no reporter's transcript and error is not evident from face of record, reviewing court presumes unreported trial testimony would demonstrate absence of error].)

11

justification for her failure to comply with the court's prior discovery orders. Although plaintiffs suggested in their notice of appeal that Souch's noncompliance was due to "poverty, health, and pandemic disruptions," such matters were irrelevant to the notice of appeal, and more importantly, they were never presented to the trial court with supporting evidence.

Additionally, the trial court did not abuse its discretion in finding that less severe sanctions would not prompt Souch's compliance. The court had already issued several orders directing Souch to comply with her discovery obligations and pay monetary sanctions to defendants, none of which had an effect on Souch's willingness to cooperate in discovery. Meanwhile, the supporting declarations of Dollar provided the court with substantial evidence that Souch was no longer participating in the litigation or cooperating with her own attorneys, who were moving to withdraw at the same time. On this record, the court reasonably concluded that lesser sanctions would be ineffective in motivating Souch to comply with the court's prior orders in time for defendants to reasonably prepare for the impending trial.

In sum, the available record amply supports the trial court's findings that Souch's noncompliance was willful and preceded by a history of abuse, and that less severe sanctions would not produce her compliance. No abuse of discretion appears. (*Parker*, *supra*, 149 Cal.App.4th at p. 297.)

Plaintiffs' arguments to the contrary are unavailing. They first contend the terminating sanction was improperly punitive. It is true that courts " 'cannot impose sanctions for misuse of the discovery process as a punishment. [Citation.] [¶] The discovery statues evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination.' " (*Padron*, *supra*, 16

12

Cal.App.5th at p. 1259.) But the record reflects that the trial court took an incremental approach to sanctioning Souch, beginning with multiple orders of monetary sanctions that proved ineffective in compelling her cooperation. After defendants moved for greater sanctions, including a terminating sanction, the court took the added step of continuing the hearing on the motion while making clear its inclination to grant the motion "[u]nless Plaintiff starts participating" in the litigation, all to no avail. Plaintiffs meanwhile did not oppose the sanctions motion, and on appeal, they do not contend that the court's findings of past discovery abuse and willful noncompliance lacked substantial evidence. On this record, a terminating sanction was not a disproportionate or merely punitive consequence for Souch's conduct.

Plaintiffs further contend that the terminating sanction improperly placed defendants in a better position than they would have been in had they obtained the sought-after discovery. We are not persuaded. The applicable principle, as explained in *Deyo*, is that a discovery sanction "should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought *and it had been completely favorable to his cause*." (*Deyo, supra*, 84 Cal.App.3d at p. 793, italics added.) Plaintiffs' briefing, however, contains no discussion of the discovery responses and documents that Souch withheld by refusing to comply with defendants' requests and the trial court's orders to provide the same. Drawing all reasonable inferences in support of the trial court's ruling, the record supports the conclusion that defendants were denied critical discovery until the eve of trial, including a complete deposition of Souch, code-compliant responses, and responsive documents to their initial set of written discovery. Assuming the withheld discovery would have been

13

favorable to defendants, we cannot agree, based on the record provided, that terminating the case as to Souch placed defendants in a better position than if they had received the requested discovery.

Souch's due process argument likewise fails. " 'A trial court must be cautious when imposing a terminating sanction because the sanction eliminates a party's fundamental right to a trial, thus implicating due process rights.' " (*J.W. v. Watchtower Bible & Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1169 (*J.W.*).) Accordingly, "[d]ue process requires adequate notice be provided prior to the imposition of sanctions." (*Id.* at p. 1167.) Souch does not claim her failure to oppose the sanctions motion stemmed from inadequate notice, and from our review of the record, we observe the notice and briefing in support of the sanctions motion made clear that defendants were seeking a terminating sanction against her. There appears no basis for concluding that Souch lacked notice or an opportunity to be heard prior to the imposition of a terminating sanction. (See § 2023.030.)

That Souch lost the opportunity to litigate her claims and defend against Max-Y's cross-complaint does not constitute a deprivation of due process. As Souch acknowledges, due process of law is "a fundamental principle of justice which is not subject to any precise definition but deals essentially with the denial of fundamental fairness, shocking to the universal sense of justice." (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 290.) "The definition in each case depends upon the circumstances varying with the subject matter and the necessities of the situation." (*Gray v. Whitmore* (1971) 17 Cal.App.3d 1, 20.) Under the circumstances presented here, which include Souch's repeated noncompliance with her discovery

obligations and the orders of the court, we may comfortably conclude she was not denied fundamental fairness.

Finally, Souch contends that rather than imposing a terminating sanction, the trial court should have imposed additional monetary sanctions and/or continued the trial date to ensure the parties were able to obtain the discovery they needed. However, Souch did not seek such lesser sanctions below, so "[w]e cannot conclude the trial court abused its discretion by failing to enter an order that was never suggested." (*J.W.*, *supra*, 29 Cal.App.5th at p. 1170.) And because plaintiffs failed to provide a reporter's transcript, we cannot assume an argument for lesser sanctions was preserved for appeal. (*Shenefield*, *supra*, 75 Cal.App.5th at p. 633, fn. 12.) In any event, as previously discussed, ample evidence supports the trial court's finding that lesser sanctions would not have compelled Souch's cooperation.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.


_____
Fujisaki, J.

WE CONCUR:

_____
Tucher, P.J.

_____
Petrou, J.


*Souch v. McCormick* (A163857)

15